USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: DEC 2 0 2012

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X
GREGORY T. FORTUNATO,
                          Plaintiff,

      -v-                                                  10 Civ. 02681 (AJN)

                                                          OPINION
ALAN R. LIEBOWITZ, ET AL,
                          Defendants.
------------------------------------------------------------------- X

ALISON J. NATHAN, District Judge:

      Plaintiff in this action, Gregory T. Fortunato, brings two procedural due process claims relating to what he contends was his wrongful termination from his position at the Westchester County Health Care Corporation ("WCHCC"). (Am. Compl. ¶¶ 3, 26-29). In his first claim, Fortunato alleges that Defendants deprived him of his procedural due process rights based on his termination without a hearing effective March 10, 2010, when Defendants misclassified him as a "probationary" employee. (Am. Compl. ¶¶ 17-18, 26-27). In his second claim, Fortunato alleges that after this termination was subsequently revoked, Defendants took part in a scheme to constructively discharge him upon his return to work because they told him he would be required to report to a supervisor whom he alleges subjected him to harassment, and thus forced his resignation. (Am. Compl. ¶¶ 22-23, 28-29).

      On November 8, 2010, Judge Preska ruled on Defendants' motion to dismiss. (Dkt. No. 16). As relevant to Fortunato's Amended Complaint, Judge Preska held that even though Fortunato had been reinstated to his initial position, with back pay, after his initial termination as a "probationary" employee, Fortunato's first claim properly stated a cognizable action because he was still permitted to seek compensation for any emotional harm he suffered as a result of his

1

discharge. (Dkt. No. 16 at 8). On February 22, 2012, the case was transferred to the undersigned. Now before the Court is Defendants' motion for summary judgment.

## I. LEGAL STANDARD

Summary judgment is proper only if there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. *Ramos v. Baldor Specialty Foods, Inc.*, 687 F.3d 554, 558(2d Cir. 2012). In reviewing the evidence on a motion for summary judgment, courts are to construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Id.* A fact is material if it might affect the outcome of the suit under the governing law and an issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*

Fortunato has not submitted a response to Defendants' Rule 56.1 statement as required by this Court's Local Rules. Rather, he has submitted his own affidavit, which expressly disputes some, but not all, of the paragraphs of Defendants' 56.1 statement and also contains additional assertions of fact; the affidavit of the president of the union to which he formerly belonged, Peter Piazza; and the affirmation of his counsel, attaching certain deposition exhibits. (Dkt. No. 54-56). Although the Court could deem admitted those portions of Defendants' 56.1 statement to which Fortunato has not expressly responded, the Court has fully considered all of the materials Fortunato has submitted. *See Monahan v. New York City Dep't of Corrections*, 214 F.3d 275, 292 (2d Cir. 2000); *see also 24/7 Records, Inc. v. Sony Music Entm't, Inc.*, 429 F.3d 39, 46 (2d Cir. 2005) (noting that courts are not required to consider what the parties fail to point out in their 56.1 statements, although they may exercise their discretion to do so).

## II. FACTS

WCHCC is a New York State Public Benefit Corporation that operates the Westchester Medical Center ("WMC"). (Rabinowitz Decl. ¶ 1). WCHCC is subject to the New York State Civil Service Laws governing the hiring, firing, and disciplining of employees. *See* N.Y. Pub. Auth. § 3304(4). When employees are hired by WMC in certain circumstances, they may be "provisionally" appointed pending their successful completion of the civil service exam and official appointment, at which time they become a "probationary" employee for a period not longer than 52 weeks, after which they automatically become "permanent." *See* N.Y. Civ. Serv. L. §§ 63, 65; Westchester Cty. Civ. Serv. R. 11.1, 12.1; *see City of Long Beach v. Civil Serv. Empls. Assn., Inc.--Long Beach Unit*, 8 N.Y.3d 465, 470-71 (2007); *Hill v. New York*, 160 A.D.2d 528, 528 (N.Y. App. Div. 1st Dep't 1990). Permanent employees may not be disciplined or terminated unless charges against them are filed and a hearing is held under New York Civil Service Law § 75.

Fortunato was hired by WMC in February 2008 as a Financial Analyst, in a provisional position, and was supervised by Deborah Brkich, the Vice President of Finance/Controller for WMC. (Brkich Decl. ¶¶ 1, 3-5; Codella Decl. Ex. 1). He passed his civil service test, and was made "contingent probationary" on September 12, 2008, and "probationary" on February 5, 2009. (Codella Decl. ¶ 5, Ex. 1). As discussed below, Fortunato became a permanent employee in September of 2009. (Codella Decl. ¶ 8).

Defendants contend that, although Fortunato's performance was initially good, Fortunato's conduct became increasingly unprofessional as time went on. For example, Brkich recounts Fortunato's initial refusal or reticence to do certain tasks assigned to him and his making certain unprofessional statements. (Brkich Decl. ¶¶ 9-10, 17). Likewise, Brkich points to several absences and numerous instances of tardiness in reporting to work on Fortunato's part.

3

(Brkich Decl. ¶¶ 12, 17-19). Defendants have submitted extensive documentation memorializing these performance issues (Brckich Decl. Exs. 1-13), and note that Fortunato continued to behave in an unprofessional manner despite being counseled and reprimanded about his behavior. (Brkich Decl. ¶¶ 11, 17).

Charges were brought against Fortunato on December 11, 2009, based on his unprofessional conduct, and he was suspended for 30 days without pay. (Brkich Decl. ¶ 20; Kukowski Decl. ¶¶ 2-3, Exs. 1-2). According to Defendants, in the few days after Fortunato returned from his suspension, he was late, disappeared from his desk without informing anyone, and started an argument with Brkich over union rules. (Brkich Decl. ¶ 21). Brkich continued to document similar behavior over the next month, leading her to place Fortunato on paid administrative leave pending the outcome of the hearing against him, which had been scheduled for March 9, 2010. (Brkich Decl. ¶ 21-22, Exs. 12-13).

Fortunato, for his part, denies many of these incidents and claims that the extensive disciplinary history that Defendants point to and the charges brought against him are actually reflective of Brkich's harassment of him in response to a complaint he made about sexual harassment—namely that Brkich referred to him as her "work boyfriend."[1] (Fortunato Aff. ¶¶ 4-20, 23). In fact, he lists a litany of incidents that he characterizes as ongoing and long-term retaliation based on his complaint of harassment, many of which relate to Brkich's discipline of him and the circumstances of his termination. (Fortunato Aff. ¶ 23).

The Defendants have submitted evidence that, on March 3, 2010, in advance of the hearing on the charges against Fortunato, scheduled for March 9, 2010, Brkich met with in-house

---

[1] Brkich denies referring to Fortunato in this way, and claims that it is Fortunato who would make such statements and that, at most, she might have played along with him when he did so. (Brkich Decl. ¶ 4)

4

counsel, Barbra Kukowski, to prepare for that hearing. (Brkich Decl. ¶ 23). Kukowski learned that Fortunato was a permanent employee, which surprised her and led her to call Human Resources to confirm his status. (Brkich Decl. ¶ 23; Kukowski Decl. ¶¶ 6-8). After speaking with Human Resources, Kukowski and Brkich were erroneously informed that Fortunato was "probationary" and could be terminated without a hearing. (Brkich Decl. ¶ 23; Kukowski Decl. ¶ 8). Fortunato's hearing on the charges against him was cancelled, and he was terminated, without a hearing, in a letter from Alan Liebowitz, Director of Labor Relations. (Brkich Decl. ¶ 23; Codella Decl. Ex. 2).

Defendants contend that the determination that Fortunato was "probationary" and could be terminated without a hearing was a mistake, based on a misunderstanding regarding how to measure the time period during which Fortunato was a probationary employee—specifically, whether his time as a "contingent probationary" employee counted toward his 52 week probationary period. (Codella Decl. ¶¶ 5-10). Rose Codella, the Director of Recruitment and Records for WCHCC, who had discussed Fortunato's status with Kukowski and Defendant Alan Liebowitz, submits a declaration and supporting e-mail explaining that she erroneously believed—until being corrected by a human resources specialist from Westchester County—that an employee's probationary status "reset" when that employee's status changed from contingent probationary to probationary. (Codella Decl. ¶¶ 4-10, Ex. 3). Thus, excluding his 30 day suspension from his probationary period, Codella understood Fortunato to be a probationary employee until March 4, 2010. (Codella Decl. ¶ 6). In actuality, Fortunato had become permanent in September 2009, one year after he had become "contingent probationary." (Codella Decl. ¶ 8).

5

Fortunato disputes that the cancellation of the hearing against him and his termination without such a hearing was based on a mistake. First, Fortunato notes that—prior to the cancellation of his Section 75 hearing, he was treated as a permanent employee based on the process that was afforded to him, suggesting that Defendants were aware he was permanent. (Opp. at 4-7). Second, he submits the declaration of Peter Piazza, his former union president, who attests that prior to Fortunato's termination on March 3, 2010, Piazza spoke with Liebowitz and Codella and told them that Fortunato was not probationary, but rather was permanent, and that he had documentation from the County of Westchester demonstrating this. (Piazza Decl. ¶¶ 3-4). The documentation he refers to, however, bears a facsimile legend dated March 4, 2010, the day *after* Fortunato was terminated.

Regardless, roughly a month after his termination Fortunato was reinstated to his position with full back pay and benefits retroactive to his termination. (Kukowski Decl. ¶ 11, Ex. 6). As such, an Article 78 proceeding that Fortunato had filed challenging his termination was dismissed as moot. (Kukowski Decl. ¶ 11, Exs. 7-8).

The day Fortunato returned to work, April 26, 2010, he met with Chris Marano, Brkich's Assistant Controller, and Jeff Jefferson, to discuss his job duties. (Brkich Decl. ¶ 4; Marano Dep. Tr. at 22:6-23). Marano informed Fortunato that he—Marano—would now be Fortunato's direct supervisor, but that, from time to time, others may give him tasks to do, including Brkich. (Marano Dep. Tr. 22:23-23:8). Fortunato informed Marano that, pursuant to a deal that had been reached through Fortunato's counsel, Fortunato was not to have any communication or contact with Brkich. (Marano Dep. Tr. 23:9-13). Marano, after speaking with Kukowski, informed Fortunato that there was no such arrangement and Brkich would be allowed to interact with him and give him tasks to complete. (Marano Dep. Tr. 23:13-24:17; *see also* Kukowski Decl. ¶ 12-

6

13). Fortunato indicated that this was unacceptable, turned in his badge, and left—resigning from his position. (Marano Dep. Tr. 24:17-23; *see also* Fortunato Aff. ¶ 22, 25).

Fortunato presents slightly different account of this meeting, attesting that he was told he would have to work with Brkich and that Marano told him that this was "take it or leave it." (Fortunato Aff. ¶ 21). He further attests that he had already told Defendants that he could not work with Brkich due to her "long-term retaliation against [him] for having confronted her and demanded that she cease referring to me as her workplace boyfriend," and that by telling him he would have to work with Brkich, Defendants were intentionally forcing him to resign. (Fortunato Aff. ¶ 22, 25). Regardless, the evidence shows that parties are in broad agreement that Fortunato refused to work with Brkich and resigned when he was told he would have to do so.

## III. DISCUSSION

### A. Fortunato's Constructive Discharge Claim

Defendants contend that summary judgment is proper on Fortunato's second claim, denial of procedural due process relating to his resignation—which Fortunato contends was a constructive discharge that deprived him of his property interest in his job—because Fortunato was not deprived of due process. A substantial line of Second Circuit precedent has held that, in the case of an alleged constructive discharge in New York, the lack of a hearing *before* a plaintiffs' resignation—*i.e.*, before the plaintiff's alleged constructive discharge—does not deprive the plaintiff of procedural due process because New York has provided an opportunity for a post-deprivation hearing. *See, e.g., Giglio v. Dunn*, 732 F.2d 1133, 1134-35 (2d Cir. 1984).

In *Giglio v. Dunn*, the plaintiff, Anthony Giglio, resigned from his position as a tenured high school principal and filed an action contending his resignation was coerced. *Id.* at 1134.

The Second Circuit affirmed the judgment of the district court which held that Giglio had failed to state a claim for denial of due process based on the lack of a hearing prior to his termination because such a hearing would have been "not only impractical, but virtually impossible" and that Giglio had available a post-deprivation remedy under Article 78 of New York Civil Practice Law. *Id.* (quotation marks omitted). The Court of Appeals explained that "[w]hen an employee resigns, the only possible dispute is whether the resignation was voluntary or involuntary, and this cannot be determined in advance" and that, "[w]here a pre-deprivation hearing is impractical and a post-deprivation hearing is meaningful, the State satisfies its constitutional obligations by providing the latter." *Id.* at 1135. Thus, because Giglio had an opportunity to file an Article 78 proceeding under New York law challenging the voluntariness of his resignation, he was not deprived of due process simply because he failed to do so, notwithstanding that he may have missed his opportunity to file such an action and be time-barred from doing so. *See id.* at 1135 & n.1.

Subsequent decisions have followed *Giglio* and held that the availability of a post-deprivation hearing in a case where a plaintiff alleges a coerced resignation satisfies the requirements of due process. *See Hoover v. County of Broome*, 340 Fed. Appx. 708, 710-11 (2d Cir. Aug. 3, 2009) (unpublished); *Stenson v. Kerlikowske*, 2000 U.S. App. LEXIS 3478, at *1-5 (2d Cir. Mar. 3, 2000) (unpublished) ("However, since Stenson alleges that he was coerced into resigning, the underlying deprivation was sufficiently unforeseeable that the availability of an Article 78 proceeding provided Stenson with 'a meaningful opportunity to challenge the voluntariness of his resignation' sufficient to ensure due process."); *Jaeger v. Board of Educ.*, 1997 U.S. App. LEXIS 28449, at *5-6 (2d Cir. Oct. 9, 1997) (unpublished); *Silverman v. City of New York*, 2001 U.S. Dist. LEXIS 22537, at *8-11 (E.D.N.Y. Nov. 19, 2001); *cf. Hellenic Am.*

8

*Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 881-82 (2d Cir. 1996) (noting that this line of decisions does not conflict with the rule that § 1983 allows plaintiffs to sue without exhausting state judicial or administrativeremedies because the availability of the Article 78 procedure establishes there was no underlying constitutional violation).

Fortunato claims that Defendants arguments are "totally ignoring the facts and [are] arguing the law in the abstract" and that, "on the unusual facts of this case" *Giglio* does not apply. (Fortunato Opp. at 15). In particular, Fortunato argues that he returned to work on the conditions that: "1) he would and/or could not report to Brkich and/or take work assignments from her; and 2) he had to be given the Section 75 hearing to which he was entitled," and thus when Defendants told him that he would have to report for Brkich for work, they knew they were forcing his resignation. (Fortunato Opp. at 15-16). Based on these facts, Fortunato claims "it was obvious in advance that [his] coerced resignation was involuntary and no post-deprivation hearing could have determined otherwise." (Fortunato Opp. at 16). Therefore, in his view, "it is self evident that a pre-deprivation hearing was not impractical" because he "could have been charged under Section 75 with refusing to report to and/or take work from assignments from Brkich and then afforded a pre-deprivation due process hearing." (Fortunato Opp. at 16).

Fortunato has cited no authority supporting his argument, and the Court concludes there are persuasive reasons to reject it. First, *Giglio* held that a pre-deprivation hearing is impractical in cases of coerced resignation, without inquiring into whether the employer may have known the resignation was likely to occur, explaining that "[w]hen an employee resigns, the only possible dispute is whether the resignation was voluntary or involuntary, and this cannot be determined in advance." *Giglio*, 732 F.2d at 1135. In fact, in *Giglio* it was not only predictable that the plaintiff would resign based on the defendant's conduct, defendants explicitly demanded

9

his resignation, telling him that his position would be abolished unless he agreed to resign. *See id.* at 1134. Despite this, *Giglio* held that, where a public employee resigns "it follows that [the employer] has the option of accepting the resignation" and the Constitution does not "insist[ ] that the [employer] must first conduct a hearing," given the availability of Article 78 post-deprivation proceedings. *Id.* at 1135. Cases following *Giglio* have likewise rejected the argument Fortunato raises here. *See Stenson*, 2000 U.S. App. LEXIS 3478, at *3-5 (rejecting the argument, in a coerced resignation case, that an Article 78 post-deprivation proceeding is only adequate "when the underlying deprivation was random, unauthorized, or *unforeseeable*" and that the employer was required to conduct a hearing because the "the deprivation was predictable and authorized" (emphasis added)); *Jaeger*, 1997 U.S. App. LEXIS 28449, at *5-6 (explaining that *Giglio* rejected the argument that an employer must demonstrate that a pre-deprivation hearing was impossible).

Second, Fortunato's claim that a pre-deprivation hearing was practical because he could have been charged under Section 75 with refusing to take work from Brkich ignores the facts of this case: Fortunato was not terminated for refusing to work with Brkich; he *resigned* from his position after being told that he would have to take work assignments from Brkich. Thus, Defendants had no opportunity or reason to bring him up on charges, or to hold a hearing based on his refusal work with Brkich, as he quit before ever actually engaging in this conduct or allowing such charges to be brought. In short, Fortunato has presented the Court with a hypothetical set of facts that did not occur.[2]

---

[2] To the extent that Fortunato argues that no post-deprivation hearing could have determined his resignation was not involuntary, this is irrelevant even if true. The issue before the Court is whether constitutionally adequate process was available to Fortunato, not whether a hearing would have found his resignation was, in fact, involuntary. The *Giglio* line of cases establishes that the availability of post-deprivation Article 78 proceedings is constitutionally

Defendants' motion for summary judgment is, therefore, granted as to Fortunato's second claim.

**B. Fortunato's Cancelled Section 75 Hearing and Termination**

Defendants raise several arguments in support of their motion for summary judgment as to Fortunato's first claim relating to his termination following his cancelled Section 75 hearing. None of them suffices, at this stage, to dispose of Fortunato's first claim for relief.

1. Random, Unauthorized Act

Defendants' primary argument for summary judgment on Fortunato's first claim is that he did not suffer a due process violation caused by his brief termination because, as with his constructive discharge claim, the availability of a post-termination Article 78 proceeding satisfied the requirements of due process. Specifically, Defendants argue, the cancellation of Fortunato's Section 75 hearing and his termination as a "probationary" employee were random, unauthorized acts of state employees for which a post-deprivation hearing suffices to provide due process. (Mot. at 14-16).

Alleged procedural due process violations are distinguished by whether the claimed deprivation occurred due to "established state procedures" versus "random, unauthorized acts of state employees." *Hellenic Am. Neighborhood Action Comm.*, 101 F.3d at 880 (2d Cir. 1996). In the case of the latter, due process is satisfied so long as the State provides a meaningful post-deprivation remedy for the deprivation of a property interest, whereas if the deprivation is due to established state procedures, a pre-deprivation process is generally required. *See id.* at 880. This distinction is based on "pragmatic considerations," namely the difficulty or impossibility of providing a meaningful pre-deprivation hearing when the deprivation is caused by the arbitrary

---

adequate process in a constructive discharge case. *See Giglio*, 732 F.2d at 1135. Absent a reason not to apply this line of cases, the hypothetical findings of such a hearing cannot affect the Court's analysis.

11

act of a state employee. *See id.* at 880; *see also Rivera-Powell v. N.Y. City Bd. of Elections*, 470 F.3d 458, 465 (2d Cir. 2006).

The Second Circuit has recognized that, "the distinction between random and unauthorized conduct and established state procedures . . . is not clear cut." *Rivera-Powell*, 470 F.3d at 465 (2d Cir. 2006). The Supreme Court has held, however, that government actors' conduct cannot be random and unauthorized where the state delegated to those actors the power and authority to effect the deprivation complained of and the duty to initiate the procedural safeguards set up by state law. *See id.* at 465 (quoting *Zinermon v. Burch*, 494 U.S. 113, 138 (1990). Relying on this holding, the Second Circuit has further held that the acts of high-ranking officials who are the "ultimate decision-makers" and have "final authority over significant matters" are not the random and unauthorized conduct for purposes of the due process analysis. *Id.* at 465-66; *see also Velez v. Levy*, 401 F.3d 75, 92 (2d Cir. 2005) (explaining that the acts of high-level officials more closely resemble state procedures than random and unauthorized acts).

Here, Defendants contend that none of Brkich, Kukowski, Jefferson, Marano, or Liebowitz have hiring or firing authority, and refer the court to "defendants' moving papers" as establishing that they report to "various Senior Vice Presidents and ultimate[ly] to the President and CEO." (Reply at 7; *see also* Mot. at 15 n.7). Defendants do not provide any citation in support of this claim, however, and upon review of Defendant's moving papers, declarations, and 56.1 statement, the Court has not located any record evidence as to whether these individuals lacked hiring or firing authority. *See Fabrikant v. French*, 691 F.3d 193, 215 n.18 (2d Cir. 2012) ("If the evidence submitted with the summary judgment motion fails to meet the movant's burden of production, then summary judgment must be denied *even if no opposing evidentiary matter is presented*." (quotation marks omitted)). At most, Defendants' make these assertions in

their memoranda of law without any citation to the record or elaboration on why, if these individuals lacked this authority, they took it upon themselves to terminate Fortunato. (Mot. at 15 n.7; Reply at 7). In fact, there is evidence in the record that suggests that Liebowitz cancelled the Section 75 hearing and terminated Fortunato's employment, suggesting he may have had such authority. (Def. 56.1 Statement ¶ 45; Kukowski Decl. ¶ 8). Moreover, as Fortunato points out, the positions and titles of at least some of the Defendants are suggestive of such authority or that they may be upper-level decision-makers: Brkich is the "Vice President of Finance/Controller" (Brkich Decl. ¶ 1). Marano is her "Assistant Controller" (Brkich Decl. ¶ 4); Jefferson is a "Labor Relations Manager (Jefferson Dep. Tr. at 6:2-3); and Liebowitz was the "Director of Labor Relations" (Kukowski Decl. ¶ 8). Nor has the Court located evidence that speaks to whether Brkich, Kukowski, or Liebowitz were tasked with the duty of ensuring that Fortunato received the procedural safeguards to which he was entitled. *Cf. Velez*, 401 F.3d at 92-93 (explaining that a defendant had the authority to cause the deprivation at issue and the duty to follow the existing New York statutes and regulations, but noting that other defendants lacked such power and that their acts seemed to fall within the "random and unauthorized" exception).

Drawing all reasonable inferences in Fortunato's favor, there is likewise a dispute of fact as to whether the Defendants were aware that Fortunato was a permanent employee and whether cancellation of the Section 75 hearing was a mistake. Although Defendants have presented substantial evidence of an innocent explanation for Fortunato's termination, the Piazza declaration creates a dispute as to whether Codella and Liebowitz were informed of his permanent status. Moreover, as to Defendants argument that this declaration should be discounted because the documentation Piazza got from the County as to Fortunato's status bears a March 4, 2010, fax legend, there is no evidence before the Court as to how this legend was

13

placed on the document and the accuracy of Piazza's declaration is itself an issue of fact. *See Newell v. City of New York*, 2002 U.S. Dist. LEXIS 4634, at *8-12 (S.D.N.Y. Mar. 19, 2002) (denying summary judgment where there were issues of material fact regarding the defendants' knowledge of the plaintiff's status at the time of her demotion, and issues as to whether defendants "may have followed administrative procedures, perhaps mistakenly, when they demoted the plaintiff").

2. <u>Qualified Immunity</u>

Relying on their assertion that the cancellation of Fortunato's Section 75 hearing was a mistake, Defendants also argue that they are entitled to qualified immunity because it was objectively reasonable for them to believe that Fortunato's termination was lawful. *See Defabio v. E. Hampton Union Free Sch. Dist.*, 623 F.3d 71, 77 (2d Cir. 2010); *see also Saucier v. Katz*, 533 U.S. 194, 206 (2001) (explaining that qualified immunity protects government employees from liability for "reasonable mistakes"); *Sorano v. Taggart*, 642 F. Supp. 2d 45, 57 (S.D.N.Y. 2009). As discussed above, there is an issue of fact as to whether Fortunato's termination was, in fact, a reasonable mistake. *See Husain v. Springer*, 494 F.3d 108, 134 (2d Cir. 2007).

3. <u>Municipal Liability</u>

Likewise, the Court cannot accept Defendants' argument that summary judgment should be granted in favor of WCHCC because Fortunato cannot prove *Monell* liability. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). For the reasons discussed above, the Court simply has insufficient materials before it from which it can make a confident determination whether any of the Defendants responsible for Fortunato's termination was a policymaker. *See Morin v. Tormey*, 626 F.3d 40, 46 n.5 (2d Cir. 2010) (explaining that the determination of whether an individual is a policymaker is a question of law, which turns in part on job

descriptions and possible factual questions as to the powers associated with the job). To the extent that *Monell* liability in this context requires demonstrating that the policymaker was deliberately indifferent to Fortunato's rights, *see Jones v. Town of E. Haven*, 691 F.3d 72, 81 (2d Cir. 2012); *Carlucci v. Kalsched*, 78 F. Supp. 2d 246, 257 (S.D.N.Y. 2000); *Murray v. Board of Educ.*, 984 F. Supp. 169, 181 (S.D.N.Y. 1997), the Piazza declaration likewise creates an issue of fact on this point.

4. Damages

Finally, Defendants assert in their reply brief that summary judgment should be granted because plaintiff has not submitted any evidence of damages, and "there is no need for a trial on illusory damages arising out of a mistaken termination that was almost immediately corrected with full back pay and benefits restored." (Reply at 9). However, a review of Defendants opening papers show that they never argued that summary judgment should be granted based on Fortunato's inability to prove damages: at most, they argued that "it is hard to imagine what emotional damages could have arisen out of the cancelled hearing." (Mot. at 14). *See Coalition on W. Valley Nuclear Wastes v. Chu*, 592 F.3d 306, 314 (2d Cir. 2009); *Coach, Inc. v. O'Brien*, 2011 U.S. Dist. LEXIS 81739, at *17-18 n.9 (S.D.N.Y. July 27, 2011). Because the Court concludes that Defendants' opening brief did not raise this issue, the Court will not consider it at this time.[3] *See, e.g., Coach, Inc.*, 2011 U.S. Dist. LEXIS 81739, at *17-18 n.9 (noting that it is

---

[3] The Court also notes that although Defendants provided deposition testimony that Fortunato has not sought medical treatment for his alleged emotional harm, the same testimony provides evidence that "as a result of this case [Fortunato] suffer[s] from anxiety, stress, upset stomach, night sweats, [and ] nights [he] can't sleep" and that it has been "terribly embarrassing [and] humiliating." (Rabinowitz Decl. Ex. 6, Fortunato Dep. at 9:7-10:9). This evidence on its own, however, may not be sufficient to establish damages. *See Patrolmen's Benevolent Ass'n of N.Y. v. City of New York*, 310 F.3d 43, 55 (2d Cir. 2002) (explaining that a plaintiff's subjective testimony is generally insufficient to prove emotional distress damages).

"well-settled that arguments advanced for the first time in a reply brief should not be considered").

## CONCLUSION

Defendants' motion for summary judgment is GRANTED as to claim two of Fortunato's complaint and is otherwise denied. The parties' joint pretrial materials are due January 18, 2013. A scheduling conference is scheduled for January 24, 2013 at 10:00 am.

SO ORDERED.

Dated: December 20, 2012
New York, New York

_____
ALISON J. NATHAN
United States District Judge